**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EZZARD CHARLES ELLIS,
*Petitioner-Appellant*,

v.

C. M. HARRISON, Warden,
*Respondent-Appellee.*

No. 16-56188

D.C. No.
5:05-cv-00520-SJO-JEM

OPINION

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted March 7, 2018
Pasadena, California

Filed June 7, 2018

Before: Michael Daly Hawkins,* A. Wallace Tashima,
and Jacqueline H. Nguyen, Circuit Judges.

Per Curiam Opinion;
Concurrence by Judge Nguyen

---

*Judge Hawkins was drawn to replace Judge Reinhardt on the panel following his death. Judge Hawkins has read the briefs, reviewed the record, and listened to the oral argument.

## SUMMARY[**]

### Habeas Corpus

The panel affirmed the district court's denial of California inmate Ezzard Ellis's habeas corpus petition in which he contended that he was denied his Sixth Amendment right to effective assistance of counsel because his trial attorney held deeply racist beliefs about African Americans in general and him in particular.

The panel held that *Mayfield v. Woodford*, 270 F.3d 915 (9th Cir. 2001) (en banc), requires rejection of Ellis's claim because Ellis concedes that he was unaware of his attorney's racism until years after his conviction was final and fails to identify any acts or omissions by his attorney that fell below an objective standard of reasonableness.

Concurring, Judge Nguyen, joined by Judges Hawkins and Tashima, wrote that when an attorney expresses such utter contempt and indifference about the fate of his minority clients as the attorney did here, he has ceased providing the reasonably competent representation that the Sixth Amendment demands. She wrote that if the panel were writing on a blank slate, she would vote to grant relief, but that she cannot in good faith distinguish Ellis's case from *Mayfield.*

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Mark Abraham Yim (argued), Deputy Federal Public Defender; Hilary Potashner, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Petitioner-Appellant.

Christine Yoon Friedman (argued), Deputy Attorney General; Daniel Rogers, Supervising Attorney General; Julie L. Garland, Senior Assistant Attorney General; Gerald A. Engler, Chief Assistant Attorney General; Xavier Becerra, Attorney General; Office of the Attorney General, San Diego, California; for Respondent-Appellee.

**OPINION**

PER CURIAM:

Ezzard Ellis, a California inmate, appeals the district court's denial of his petition for writ of habeas corpus. He contends that he was denied his Sixth Amendment right to effective counsel because his trial attorney held deeply racist beliefs about African Americans in general and him in particular. Our precedent involving the same attorney and mostly the same evidence requires us to reject this contention. When defense counsel does not express his racist views to his client, no conflict will be presumed, and the defendant must show both deficient performance and prejudice to establish a Sixth Amendment violation. Since Ellis fails to do so here, we affirm the district court.

**I.**

Ellis and his co-defendant were charged with the November 1989 murder, attempted murder, and robbery of

two men who were waiting in their car at a McDonald's drive-through window. Several witnesses who observed the crime to varying extents testified with corresponding certainty that Ellis looked like the shooter. Although the surviving victim repeatedly failed to identify Ellis in live and photographic lineups, a McDonald's employee who knew Ellis from school testified that he was the shooter.

Attorney Donald Ames, now deceased, was appointed to represent Ellis. Ellis's first two trials ended in mistrials due to witnesses being unavailable. His third and fourth trials resulted in hung juries. At the conclusion of his fifth trial in June 1991, Ellis was convicted of special circumstance murder, attempted murder, and two counts of robbery. He received a sentence of life without the possibility of parole. His conviction became final on May 29, 1996.

In March or April 2003, Ellis's friend sent him a newspaper article about Ames's "lousy" performance as a capital defense attorney. The article described Ames as "deceptive, untrustworthy, and disloyal to his capital clients" (quoting *Anderson v. Calderon*, 276 F.3d 483, 484 (9th Cir. 2001) (Reinhardt, J., dissenting from denial of rehearing en banc)). It recounted the testimony of Ames's adult daughters regarding his "frequent use of deprecating remarks and racial slurs about his clients."

Ellis obtained declarations from two of Ames's daughters in which they described their father's racism. According to one, Ames harbored "contempt for people of other races and ethnic groups" and "especially ridiculed black people, referring to them with racial invectives." The other daughter recalled a May 1990 conversation in which

Ames referred to his client Melvin Wade as a "nigger" who "got what he deserved."[1]

Ellis also obtained declarations from individuals who worked with Ames. A fiscal clerk at the San Bernardino Superior Court stated in a declaration that Ames employed "racist terms to characterize court personnel, his employees, and his clients."[2] A legal secretary who worked for Ames from September 1990 to January 1991 heard Ames talking about a client: "because his client was black," Ames said, "he did not trust him and did not care what happened to him." A secretary in Ames's office from January to June 1991 stated that Ames "consistently refer[red] to his African American employees as 'niggers'" and "his African-American co-counsel as 'a big black nigger trying to be a white man.'" In the fifth trial, which took place during the

---

[1] We overturned Wade's death sentence due to Ames's ineffective assistance at the penalty phase. *See Wade v. Calderon*, 29 F.3d 1312, 1325 (9th Cir. 1994). The declarations from Ames's daughters were executed in the 1990s in connection with *Wade*. In the district court proceedings, Ellis submitted more recent declarations from the daughters. In one, Ames's daughter recalls a case from 1990 or 1991 involving "African-American men . . . accused of holding up or robbing someone at a fast food restaurant," in which Ellis "referred to his client . . . with racial slurs" and "commented on how stupid his client was." We cannot consider the updated declarations because the state courts had no opportunity to do so. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.").

[2] Referring to African Americans, Ames stated, "those people can't learn anything." In a case tried during the summer of 1990, Ames opined that his Hispanic client "deserves to fry" and that the presiding judge was "a fucking Jap" who should "remember Pearl Harbor." The client was convicted and sentenced to death. *See People v. Gutierrez*, 52 P.3d 572 (Cal. 2002).

first half of 1991, Ellis's co-defendant was represented by an African American attorney.

Ellis sought habeas relief in the state courts, arguing that he received constitutionally ineffective assistance of counsel because his counsel's "racial prejudice against African-Americans" created an actual conflict of interest. When that proved unsuccessful, Ellis filed a federal habeas petition pursuant to 28 U.S.C. § 2254. The district court initially denied relief on the ground that Ellis's petition was untimely. We reversed, holding that the petition could be timely if Ellis were entitled to equitable tolling. *Ellis v. Harrison*, 270 F. App'x 721 (9th Cir. 2008). On remand, the district court determined that Ellis was not entitled to equitable tolling and again denied relief. We disagreed and once more remanded for further proceedings. *Ellis v. Harrison*, 563 F. App'x 531 (9th Cir. 2014). Ellis now appeals the district court's denial of his Sixth Amendment claim on the merits.

## II.

We have jurisdiction under 28 U.S.C. §§1291 and 2253. Because Ellis's habeas petition is subject to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we cannot grant relief unless he meets its "demanding standard." *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1727 (2017) (per curiam). As applicable here, Ellis must show that "the underlying state court merits ruling was 'contrary to, or involved an unreasonable application of, clearly established Federal law' as determined by [the Supreme] Court." *Id.* (quoting 28 U.S.C. § 2254(d)(1)). In making this determination, we look to the last reasoned state court decision, *see Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018), which is the state superior court's order denying Ellis's habeas petition.

Whether the Sixth Amendment's guarantee of effective counsel was satisfied is generally analyzed under the standard of *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of both deficient performance by counsel and consequent prejudice. *Id.* at 687. In this context, "prejudice" means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is less than a preponderance of the evidence. *See id.* at 693 ("[A] defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case.").

Not every Sixth Amendment claim requires the same showing of prejudice. When the assistance of counsel is actually or constructively denied altogether, "prejudice is presumed." *Id.* at 692 (citing *United States v. Cronic*, 466 U.S. 648, 659 & n.25 (1984)). A similar but more limited presumption of prejudice arises "when counsel is burdened by an actual conflict of interest." *Id.* (citing *Cuyler v. Sullivan*, 446 U.S. 335, 345–50 (1980)). Prejudice is presumed in such cases only if counsel "actively represented conflicting interests" and "an actual conflict of interest adversely affected [the] lawyer's performance." *Id.* (quoting *Sullivan*, 446 U.S. at 350, 348).

The Supreme Court has not established the applicable standard of prejudice—*Strickland*, *Cronic*, or *Sullivan*—when counsel is alleged to have performed deficiently on account of racial animus towards a client. The superior court, evidently applying *Strickland*, concluded that Ellis was not prejudiced because "[h]e has not reasonably shown by competent evidence that, absent any or all of [Ames's] acts, the outcome of the trial would have been more favorable to him." However, the superior court required

"proof of this prejudice" to be "by a preponderance of the evidence," a standard more stringent than and therefore "contrary to" *Strickland*, *Cronic*, and *Sullivan*. 28 U.S.C. § 2254(d)(1); *see Williams v. Taylor*, 529 U.S. 362, 405–06 (2000) ("If a state court were to reject a prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner had not established by a preponderance of the evidence that the result of his criminal proceeding would have been different, that decision would be [contrary] to our clearly established precedent [under] *Strickland* . . . ."). Consequently, the state court decision is not entitled to AEDPA deference, and we review Ellis's claim de novo. *See Lafler v. Cooper*, 566 U.S. 156, 173 (2012); *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc).

## III.

Even under de novo review, any relief for Ellis must be based on a rule that was clearly established at the time his conviction was final. *See Teague v. Lane*, 489 U.S. 288, 310 (1989) ("[N]ew constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced."). This differs from AEDPA review in that we may consider our own as well as Supreme Court precedent in determining which rules are clearly established. *See Williams*, 529 U.S. at 412; *Burton v. Davis*, 816 F.3d 1132, 1142 (9th Cir. 2016).

Before Ellis's conviction was final, we decided a case concerning "an appointed lawyer who calls [the defendant] to his face a 'stupid nigger son of a bitch' and who threatens to provide substandard performance for him if he chooses to exercise his right to go to trial." *Frazer v. United States*, 18 F.3d 778, 783 (9th Cir. 1994). We held that these facts "would render so defective the relationship inherent in the right to trial counsel guaranteed by the Sixth Amendment

that [the defendant] would be entitled to a new trial with a different attorney," *id.* at 784, and that the constitutional defect was "so egregious . . . that 'a presumption of prejudice [would be] appropriate without inquiry into the actual conduct of the trial," *id.* at 785 (quoting *Cronic*, 466 U.S. at 660).

*Frazer*'s rule of prejudice per se relied in part on the outburst itself. The racial slur combined with the extortionate statement "completely destroy[ed] and negate[d] the channels of open communication needed for the [attorney-client] relationship to function as contemplated in the Constitution." *Id.* at 785. At the same time, *Frazer* also relied on the attorney's racial animus, regardless of the defendant's awareness of it. *See id.* at 782 ("[A]n attorney who adopts and acts upon a belief that his client should be convicted 'fail[s] to function in any meaningful sense as the Government's adversary.'" (quoting *Osborn v. Shillinger*, 861 F.2d 612, 625 (10th Cir. 1988))); *id.* at 784 ("Discrimination within the judicial system is most pernicious because it is 'a stimulant to that race prejudice which is an impediment to securing to [black citizens] that equal justice which the law aims to secure to all others.'" (quoting *Batson v. Kentucky*, 476 U.S. 79, 87–88 (1986))).

Seven years later, however, we rejected a claim that "Ames' racism and his concern that he not be perceived by the San Bernardino bar or bench as requesting too much funding prevented [him] from effectively representing [the defendant]." *Mayfield v. Woodford*, 270 F.3d 915, 924 (9th Cir. 2001) (en banc). The habeas petitioner submitted the same declarations from Ames's daughters and colleagues upon which Ellis now relies. Analyzing the claim under *Sullivan*, we held that the petitioner "ha[d] not demonstrated that Ames performed poorly *because of* the alleged

conflicts" and therefore was not entitled to relief. *Id.* at 925. To the extent *Frazer* held that defense counsel's extreme animus towards the persons of the defendant's race violates the Sixth Amendment without need to show prejudice, *Mayfield* implicitly overruled that holding.[3]

## IV.

In order to demonstrate that Ames's racist views prejudiced him, Ellis must show either that he knew of these views during a critical phase of the proceedings, leading to a complete breakdown in communication as in *Frazer*, or that Ames's racism otherwise adversely affected his performance as counsel. Ellis concedes that he was unaware of Ames's racism until several years after his conviction was final. And while the relationship between counsel's bigotry and his performance at Ellis's trial is much less attenuated than in *Mayfield*—here, the representation occurred contemporaneously with the statements at issue whereas Mayfield's trial was held approximately a decade earlier— Ellis fails to identify any acts or omissions by Ames that "fell below an objective standard of reasonableness." *Strickland*,

---

[3] It is possible that the en banc court in *Mayfield* was simply unaware of *Frazer*, since neither the majority nor the dissent cites it. *See Mayfield*, 270 F.3d at 925 ("It is by no means clear from precedent that the grounds for conflict alleged . . . are cognizable under ineffective assistance case law."). In any event, *Mayfield* was a pre-AEDPA case applying the extremely permissive standard for granting a certificate of appealability: whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," resolving "any doubt regarding whether to issue a COA in favor of [the petitioner]." *Id.* at 922 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *see Lambright v. Stewart*, 220 F.3d 1022, 1025 n.4 (9th Cir. 2000) ("[T]he showing a petitioner must make to be heard on appeal is less than that to obtain relief.").

466 U.S. at 688 (1984).  We are therefore bound under *Mayfield* to reject his claim.

**AFFIRMED.**

---

NGUYEN, Circuit Judge, with whom HAWKINS and TASHIMA, Circuit Judges, join, concurring:

If we were writing on a blank slate, I would vote to grant relief.  Of the constitutional rights given to a criminal defendant, none is more important than the Sixth Amendment right to counsel.  By allowing Ellis's conviction to stand, we make a mockery of that right.

Ellis's lawyer, Donald Ames, openly and repeatedly expressed contempt for people who look like Ellis based on the ugliest of racial stereotypes.  This was not just the depressingly common assumption that criminal defendants of certain races are more likely to be guilty, but something far more sinister: a belief in the inferiority of all people of color—be they support staff, co-counsel, or judge.  Most damning of all, Ames made it clear that he did not care what happened to his black clients.  It would be impossible for anyone with such views to adequately represent a non-white defendant.

I do not suggest that a conviction should be overturned whenever a racially tinged comment by defense counsel comes to light.  Racism has as many shades as race, and we generally assume that counsel can set aside any personal distaste for a client, whatever its motivation, to zealously advocate on his behalf.  But when an attorney expresses such utter contempt and indifference about the fate of his minority clients as Ames did here, he has ceased providing the

reasonably competent representation that the Sixth Amendment demands. A defendant in such an untenable position may be better off with no counsel at all.

Lawyers today look very different than they did in 1991, when Ellis was tried. Within a generation, diversity among legal practitioners has markedly increased. On appeal in our court, of the three judges and two advocates at oral argument, four were people of color. These changes matter. Minority lawyers' greater representation on the bar has led to a growing acknowledgment and intolerance of racial bias in the practice of law. But it has not ended racism, both subtle and overt. People of color are still underrepresented in the legal profession but overrepresented among criminal defendants and face greater odds of conviction and higher average sentences. *See, e.g.*, Robert J. Smith et al., *Implicit White Favoritism in the Criminal Justice System*, 66 Ala. L. Rev. 871, 877–90 (2015).

When examining the reasonableness of counsel's performance, we extend considerable deference to strategic choices. This deference is predicated on the assumption that counsel is acting in the client's best interest. For an attorney as deeply racist as Ames, that assumption is unfounded. It makes no difference that Ellis was unaware of his counsel's beliefs. The deleterious effect of such racism on the outcome is usually impossible to prove and, under these circumstances, we should presume prejudice.

Because I cannot in good faith distinguish Ellis's case from *Mayfield*, I reluctantly concur in the opinion. Had we not been bound by *Mayfield*, I would have granted Ellis's petition.