**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KEVIN COOPER; ALBERT
GREENWOOD BROWN; RONALD
LEE DEERE; ROBERT G. FAIRBANK;
ANTHONY J. SULLY,
  *Plaintiffs-Appellees*,

v.

GAVIN NEWSOM; SCOTT KERNAN,
Secretary of the California
Department of Corrections and
Rehabilitation; RONALD DAVIS,
Warden of San Quentin State
Prison,
  *Defendants-Appellees*,

v.

SAN BERNARDINO COUNTY
DISTRICT ATTORNEY; SAN MATEO
COUNTY DISTRICT ATTORNEY;
RIVERSIDE COUNTY DISTRICT
ATTORNEY,
  *Movants-Appellants*.

No. 18-16547

D.C. Nos.
3:06-cv-00219-RS
3:06-cv-00926-RS

ORDER

Filed March 2, 2022

Before:  William A. Fletcher, Danielle J. Forrest, and
Lawrence VanDyke, Circuit Judges.

Order;
Concurrence by Judges W. Fletcher and Forrest;
Dissent by Judge Bumatay;
Dissent by Judge Callahan;
Dissent by Judge VanDyke

## SUMMARY[*]

### Civil Rights/Death Penalty

The panel denied on behalf of the court rehearing en banc after a judge sua sponte called for a vote on whether to rehear this case en banc and the matter failed to receive a majority of votes of the nonrecused active judges in favor of en banc consideration.

The panel opinion affirmed, in part, the district court's denial of a motion to intervene by the District Attorneys of San Bernardino, San Mateo, and Riverside Counties, and dismissed, in part, the District Attorneys' appeal in an action by death row inmates seeking a stay of execution on the ground that California's execution protocol violates the Eighth Amendment.  The panel held that the district court (1) properly denied intervention as of right under Fed. R. Civ.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

P. 24(a) because the District Attorneys had not shown a significant protectable interest in the litigation; and (2) did not abuse its discretion in denying permissive intervention under Fed. R. Civ. P. 24(b).

Concurring in the denial of rehearing en banc, Judge W. Fletcher and Forrest stated that the voters of California approved the Death Penalty Procedures Initiative of 2016, otherwise known as Proposition 66, retaining the death penalty. *Inter alia*, Proposition 66 created a mechanism allowing District Attorneys to move in the state court that imposed the death penalty for an order directing the California Department of Corrections and Rehabilitation ("CDCR") to "perform any duty needed to enable it to execute the judgment." Cal. Penal Code § 3604.1(c). But neither Proposition 66, nor any other provision of California law, gave District Attorneys authority to participate in choosing the method by which California executes condemned prisoners, or to represent in court those who have the authority to make that choice. The people of California, through their chosen representatives, assigned the ultimate duty to execute state laws to the Governor, Cal. Const. art. V, § 1; the duty to oversee execution procedures to the Secretary of the CDCR, Cal. Penal Code § 3604; the duty to implement execution to the Warden of San Quentin, Cal. Penal Code §§ 3603, 3605, 3607; and the duty to defend state laws and officers to the Attorney General, Cal. Gov't Code § 12512. Because the District Attorneys have no statutory authority concerning the method of execution, they had no right to intervene under Rule 24(a)(2). The panel's opinion faithfully followed California law; correctly applied Federal Rule 24(a)(2); and was consistent with two analogous cases decided by sister circuits: *Saldano v. Roach*, 363 F.3d 545,

551–56 (5th Cir. 2004), and *Harris v. Pernsley*, 820 F.2d 592, 600 (3d Cir. 1987).

Dissenting from the denial of rehearing en banc, Judge Bumatay, joined by Judges Gould, Callahan, Ikuta, Bennett and VanDyke, stated that in denying the District Attorneys' intervention in this case, not only did the court cast aside the will of the people, but it seriously mangled its Rule 24 caselaw. Based on this court's precedent for evaluating a prospective intervenor's claim of a "significantly protectable" interest, the panel majority should have ruled that the District Attorneys have a significantly protectable interest in the litigation challenging the constitutionality of California's death penalty protocols. While the District Attorneys' general mandate to enforce criminal judgments may alone be enough to create a protectable interest, Proposition 66 confirmed that they have exceeded the Rule 24 protectable-interest threshold. By approving Proposition 66, the people of California both expressly voiced their will to retain the death penalty and enacted a law expanding the authority of district attorneys to carry out the punishment. The panel majority erred by requiring the District Attorneys to show an on-point statutory grant to intervene in challenges to death penalty protocols. The cramped view espoused by the panel majority could neither be squared with precedent nor with the court's guiding principles favoring intervention. Not only did the court disregard its longstanding view of what constitutes a protectable interest, it also significantly heightened the relationship requirement between the protectable interest and the plaintiff's claims in the litigation.

Dissenting from the denial of rehearing en banc, Judge Callahan, joined by Judges Bumatay and VanDyke, fully joined Judge Bumatay's dissent. Judge Callahan wrote

separately to further emphasize the profound practical consequences of the panel majority's ruling. Despite the clear legal mandate from voters in approving Proposition 66, which reaffirmed the electorate's support for the death penalty, the Governor of California unilaterally repealed California's lethal injection protocol and instituted a moratorium on state executions. The Governor and the Secretary of the CDCR then agreed with the plaintiffs, inmates on California's death row, to voluntarily dismiss this case on terms that will resurrect the inmates' Eighth Amendment challenge to the protocol if the Governor's moratorium is ever withdrawn. *Cooper v. Newsom*, 13 F.4th 857, 863–64 (9th Cir. 2021). Since 2006, California has not executed an inmate on death row. The panel majority's decision rejecting the District Attorneys' attempt to intervene, ostensibly on the ground that they have no legal interest in enforcing the death penalty, is directly contradicted by the terms of Proposition 66, which expressly provides California district attorneys with the right to seek to compel the CDCR to carry out the death penalty. The panel majority's refusal to allow district attorneys to play their important statutory role in enforcing the death penalty means that the specter of this federal court litigation will continue to subvert the voters' will and deny justice to victims' families even if the moratorium is at some point withdrawn.

Dissenting from the denial of rehearing en banc, Judge VanDyke, joined by Judges Callahan, Ikuta and Bumatay, wrote that he agreed and joined in full with Judge Bumatay's and Judge Callahan's dissents. He wrote separately to briefly make one supplemental observation about this circuit's inconsistent application of Rule 24. Judge VanDyke stated that this court needs a standard that will result in setting a more consistent threshold for intervention; the erratic

application of Rule 24 needs correction, and if the circuit had taken this case en banc it could have done so by tying Rule 24's "interest" inquiry to the well-established standing doctrine. But until something like that is done—either by this court or the Supreme Court—future parties and panels will be forced to address these issues against the backdrop of the circuit's inconsistent precedents, and the lingering appearance of unfairness they perpetuate.

<hr />

## COUNSEL

Robert P. Brown (argued), Chief Deputy District Attorney; James R. Second, Deputy District Attorney; Jason Anderson, District Attorney; District Attorney's Office, San Bernardino, California; Michael A. Hestrin, District Attorney; Ivy B. Fitzpatrick, Managing Deputy District Attorney; Office of the District Attorney, Riverside, California; Stephen M. Wagstaffe, San Mateo County District Attorney's Office, Redwood City, California; for Movants-Appellants.

John R. Grele (argued), Law Office of John R. Grele, San Francisco, California; David A. Senior, Sara Cobbra, and Ann K. Tria, McBreen & Senior, Los Angeles, California; Norman C. Hile, Orrick Herrington & Sutcliffe LLP, Sacramento, California; Richard P. Steinken, Jenner & Block, Chicago, Illinois; Margo Rocconi and Elizabeth Dahlstrom, Federal Public Defender's Office, Los Angeles, California; for Plaintiffs-Appellees.

Misha D. Igra (argued), Supervising Deputy Attorney General; Monica N. Anderson, Senior Assistant Attorney General; Rob Bonta, Attorney General; Attorney General's Office, Sacramento, California; for Defendants-Appellees.

## ORDER

A judge sua sponte called for a vote on whether to rehear this case en banc. The matter failed to receive a majority of votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 35(f). Judge Lee and Judge Koh did not participate in the deliberations or vote in this case. Rehearing en banc is **DENIED**.

Filed concurrently with this order are Judge W. Fletcher and Judge Forrest's concurrence in and Judge Bumatay's, Judge Callahan's, and Judge VanDyke's separate dissents from the denial of rehearing en banc.

W. FLETCHER and FORREST, Circuit Judges, concurring in the denial of rehearing en banc:

The question in this appeal is whether the District Attorneys of California's San Bernardino, San Mateo, and Riverside counties may intervene in litigation challenging the constitutionality of California's chosen method of execution. We held that because the District Attorneys have no authority under California law to participate in choosing the method by which California executes condemned prisoners, or to represent in court those who do have that authority, the district court properly denied intervention. *Cooper v. Newsom*, 13 F.4th 857, 864–69 (9th Cir. 2021).

The District Attorneys did not seek panel or en banc rehearing of our decision. Instead, one of our colleagues sua sponte called for rehearing en banc, contending that the District Attorneys are entitled to intervene as of right under

Federal Rule of Civil Procedure 24(a)(2). A majority of our court voted not to rehear the case. Several of our colleagues now dissent from that decision.

The voters of California approved the Death Penalty Procedures Initiative of 2016, otherwise known as Proposition 66, retaining the death penalty. *Inter alia*, Proposition 66 created a mechanism allowing District Attorneys to move in the state court that imposed the death penalty for an order directing the California Department of Corrections and Rehabilitation ("CDCR") to "perform any duty needed to enable it to execute the judgment." Cal. Penal Code § 3604.1(c). But neither Proposition 66, nor any other provision of California law, gives District Attorneys authority to participate in choosing the method by which California executes condemned prisoners, or to represent in court those who have the authority to make that choice.

California law is clear that the responsibility to formulate, promulgate, and effectuate California's execution protocols is assigned to the defendants in this action—the Governor, the Secretary of the CDCR, and the Warden of San Quentin Prison. Cal. Const. art. V, § 1; Cal. Penal Code § 3604; Cal. Penal Code §§ 3603, 3605, 3607. California law is also clear that the Attorney General, rather than a District Attorney, has the responsibility to represent these defendants. Cal. Gov't Code § 12512. The California Supreme Court has held that the authority of District Attorneys to participate in civil litigation is "narrow and specific," as expressly defined by statute. *Safer v. Superior Ct. of Ventura Cnty.*, 15 Cal.3d 230, 237 (1975). Because the District Attorneys have no statutory authority to participate in this litigation, they have no right to intervene under Rule 24(a)(2).

Our dissenting colleagues contend that our panel's decision "cast[s] aside the will of the people" and "seriously mangle[s] our Rule 24 caselaw." Judge Bumatay Dissent at 18. They are mistaken on both counts. Our opinion faithfully follows California law; correctly applies Rule 24(a)(2); and is consistent with two analogous cases decided by our sister circuits.

## I. Rule 24(a)(2)

Rule 24(a)(2) allows intervention as of right if a party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the [party's] ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). We apply a four-part test:

> (1) the motion must be timely; (2) the applicant must claim a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc) (citations omitted).

"An applicant for intervention has a significantly protectable interest if the interest is protected by law and

there is a relationship between the legally protected interest and the plaintiff's claims." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). The legally protected interest need not be protected under the statute under which the litigation is brought; it is sufficient for the interest to be "protectable under any statute." *Id.* As we noted in our opinion, *Cooper*, 13 F.4th at 865, we weigh both practical and equitable concerns, and we interpret the Rule's requirements broadly in favor of intervention. *Alisal Water Corp.*, 370 F.3d at 919.

The suit into which the District Attorneys seek to intervene was brought by condemned prisoners against the Governor, the Secretary of the CDCR, and the Warden of San Quentin, challenging the constitutionality of California's chosen method of execution. This case has a long history, which we recount in our opinion. *See Cooper*, 13 F.4th at 860–62. The suit was filed in 2006 by death row inmate Michael Morales, challenging California's then-existing execution protocol. The District Attorneys moved to intervene in June and July 2018.

Our dissenting colleagues argue that the District Attorneys are entitled to intervene on the ground that they have significant interest in enforcing the capital sentences in their counties. We agree that the District Attorneys have the authority to conduct all prosecutions for public offenses, including capital offenses. Cal. Const. art. XI, § 1(b); Cal. Gov't Code § 26500. California law gives its District Attorneys "sole discretion to determine whom to charge, what charges to file and pursue, and what punishment to seek." *Dix v. Superior Ct.*, 53 Cal.3d 442, 451 (1991). We also agree that the District Attorneys have the authority to seek orders directing the CDCR to carry out judgments of

execution entered in their counties. Cal. Penal Code § 3604.1(c). However, the District Attorneys' statutory authority does not include the authority to choose *the method* by which California executes condemned inmates, or to defend in court those who do have the authority to make that choice.

Our colleagues disagree and contend that California Penal Code § 3604.1(c), enacted pursuant to Proposition 66, gives the District Attorneys a significant protectable interest in the litigation over the constitutionality of California's chosen method of execution. Judge Bumatay Dissent at 17, 23–24; Judge Callahan Dissent at 30; Judge VanDyke Dissent at 36. Section 3604.1(c) provides:

> The court which rendered the judgment of death has exclusive jurisdiction to hear any claim by the condemned inmate that the method of execution is unconstitutional or otherwise invalid. Such a claim shall be dismissed if the court finds its presentation was delayed without good cause. If the method is found invalid, the court shall order the use of a valid method of execution. If the use of a method of execution is enjoined by a federal court, the Department of Corrections and Rehabilitation shall adopt, within 90 days, a method that conforms to federal requirements as found by that court. If the department fails to perform any duty needed to enable it to execute the judgment, the court which rendered the judgment of death shall order it to perform that duty on its own motion, on motion of the District Attorney or

> Attorney General, or on motion of any victim
> of the crime as defined in subdivision (e) of
> Section 28 of Article I of the California
> Constitution.

As we wrote in our opinion, the plain language of § 3604.1(c) "only authorizes District Attorneys to move in the state trial court that imposed the death penalty for an order directing the CDCR to perform its duty to carry out the court's judgment." *Cooper*, 13 F.4th at 867. It does not authorize the District Attorneys to participate in choosing the method of execution, or to participate in civil litigation challenging the method of execution.

Our colleagues contend that our application of Rule 24(a)(2) is inconsistent with our precedent. They rely on a line of cases in which we have held that an intervenor had a significant protectable interest under Rule 24(a)(2) deriving neither from an express statutory interest nor from a real property right. Judge Bumatay Dissent at 21–23 (citing *Idaho v. Freeman*, 625 F.2d 886, 887 (9th Cir. 1980)*; Washington State Bldg. & Constr. Trades Council, AFL-CIO v. Spellman*, 684 F.2d 627, 629–30 (9th Cir. 1982); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 526–28 (9th Cir. 1983); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392 (9th Cir. 1995)).

In *Idaho v. Freeman*, we held that the National Organization for Women, a leading national advocate of the Equal Rights Amendment to the U.S. Constitution, had a right to intervene in a suit challenging procedures for the ratification of the proposed Amendment. 625 F.2d at 887. In *Washington State Bldg. & Const. Trades Council, AFL-CIO*, we held that a public interest organization, Don't Waste

Washington, had a right to intervene in litigation challenging the constitutionality of a successful ballot initiative that they had sponsored. 684 F.2d at 629–30. In *Sagebrush Rebellion*, we held that a group of would-be intervenors—including the National Audubon Society, five environmental Idaho nonprofit organizations, and four Idaho residents—had a right to intervene in a suit challenging the legality of the Secretary of the Interior's actions surrounding the creation of the Snake River Birds of Prey National Conservation Area because of their active role in the administrative establishment of the conservation area and their interest in the preservation of the birds and the birds' habitat. 713 F.2d at 526–28. Finally, in *Idaho Farm Bureau Federation*, we held that the Idaho Conservation League and the Committee for Idaho's High Desert had a right to intervene in litigation challenging the U.S. Fish and Wildlife Service's listing of an endangered species because they advocated for the listing throughout the administrative process. 58 F.3d at 1397–98.

These cases are inapposite. Each of them addresses intervention by non-governmental organizations in actions challenging the legality of measures they sponsored through legislative processes or sought in formal administrative rulemaking proceedings. None of them supports intervention as of right by government officials who lack statutory authority to participate in the formulation of the policy at issue, or to represent the government entity or official who does have that authority. In the case before us, the state officials responsible under state law for choosing the appropriate method or execution have been sued, and they are represented by the state Attorney General, the state official responsible under state law for defending them.

Judge Bumatay contends that the District Attorneys' role as public officials gives them at least as valid an interest in civil litigation affecting their interest in seeing death judgments carried out as the interests the non-governmental organizations and individuals had in the above cases. Judge Bumatay Dissent at 23. In fact, the opposite is true. It is *because* the District Attorneys are public officials, and because their authority to pursue civil litigation is limited by state law, that they do not have an interest sufficient to support intervention under Rule 24(a)(2). *Cooper*, 13 F.4th at 866–67; *cf. United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) (granting intervention to police officers' union in suit challenging the constitutionality of policing procedures based on its right to negotiate terms and conditions of its members' employment).

Judge Bumatay further contends that "[w]hile California courts have recognized some limits to district attorneys' authority to pursue civil *prosecutions*, no California court has said that district attorneys are prohibited from *defending* the constitutionality of state laws, such as the State's death-penalty protocol." Judge Bumatay Dissent at 25 (emphasis in original). This is incorrect. The foundation California case is *Safer*, decided by the California Supreme Court almost fifty years ago. The Court wrote, "By the specificity of its enactments the Legislature has manifested its concern that the district attorney exercise the power of his office only in such civil litigation as that lawmaking body has, after careful consideration, found essential. An examination of the types of civil litigation in which the Legislature has countenanced the district attorney's participation reveals both the specificity and the narrow perimeters of these authorizations." *Safer*, 15 Cal.3d at 235. *Safer* requires statutory authorization not only for prosecution by District

Attorneys, but also for "interven[tion]," "appearance," "defen[se]," "represent[ation]," and "participation" by District Attorneys. *Id.* at 235–37.

The two cases cited by Judge Bumatay in support of this contention are also inapposite. Judge Bumatay Dissent at 25–26. District Attorneys are statutorily authorized to bring civil suits to enforce California's Unfair Competition Law ("UCL"). *See* Cal. Bus. & Prof. Code §§ 17204, 17206(a). In *Abbott Laboratories v. Superior Court*, 9 Cal.5th 642, 663–664 (2020), the Court held that a District Attorney may seek a state-wide injunction under the UCL. In *People v. McKale*, 25 Cal.3d 626, 633–634 (1979), the Court held that a District Attorney may sue under the UCL to enforce California's Mobilehome Parks Act.

## II.  Our Sister Circuits

In analogous cases, our sister circuits have recognized similar limits on district attorneys' interest in civil litigation. As we discussed in our opinion, *Cooper*, 13 F.4th at 867–88, the Fifth Circuit in *Saldano v. Roach*, 363 F.3d 545, 551–56 (5th Cir. 2004), denied a district attorney intervention as of right in a Texas prisoners' habeas corpus proceeding. The court held that Texas law did not grant district attorneys the authority to represent state officials or the State in federal habeas corpus proceedings; that authority was delegated to the Attorney General. *Id.* at 552. Similarly, the Third Circuit in *Harris v. Pernsley*, 820 F.2d 592, 600 (3rd Cir. 1987), denied a district attorney the right to intervene in constitutional litigation challenging the conditions in Pennsylvania state prisons. The court held that the scope of the district attorneys' interest was "defined by the scope of his legal duties under Pennsylvania law" and they had "no

legal duties or powers with regard to the conditions in the Philadelphia prison system." *Id.* at 597, 600.

In both cases, the Fifth and Third Circuits recognized that state law gave the district attorneys an interest in prosecuting criminal cases. Those courts also recognized that the district attorneys' interest in prosecuting cases and seeing the resulting judgments of conviction and punishments carried out would be affected as a practical matter by the litigation. But those courts nevertheless held that the district attorneys' role was limited by state law, and that they therefore did not have a legally protectable interest that would merit intervention as of right. *Saldano*, 363 F.3d at 553; *Harris*, 820 F.2d at 601–02.

* * *

While the people of California chose in Proposition 66 to retain the death penalty and to give District Attorneys an additional mechanism to pursue enforcement of a death sentence, they did not give District Attorneys authority to participate in the State's choice of execution methods or in the legal defense of those methods. Cal. Penal Code § 3604.1(c). The people of California, through their chosen representatives, assigned the ultimate duty to execute state laws to the Governor, Cal. Const. art. V, § 1; the duty to oversee execution procedures to the Secretary of the CDCR, Cal. Penal Code § 3604; the duty to implement execution to the Warden of San Quentin, Cal. Penal Code §§ 3603, 3605, 3607; and the duty to defend state laws and officers to the Attorney General, Cal. Gov't Code § 12512. Our dissenting colleagues gloss over these facts, suggesting that Californians have spoken in a singular voice in favor of the death penalty and the expansion of the District Attorneys' authority into

areas statutorily delegated to other state officials. We cannot agree. Our opinion respects the will of California voters by considering not only Proposition 66, but also the statutory roles assigned to California's respective state officials by the people's elected representatives.

---

BUMATAY, Circuit Judge, with whom GOULD, CALLAHAN, IKUTA, BENNETT, and VANDYKE, Circuit Judges, join, dissenting from the denial of rehearing en banc:

With the passage of Proposition 66 in 2016, the people of California unambiguously expressed a desire to retain the death penalty and to remove obstacles to carrying-out death judgments. *See Briggs v. Brown*, 3 Cal. 5th 808 (2017). Through Proposition 66, the people empowered California's elected district attorneys to ensure that the California Department of Corrections and Rehabilitation, the agency tasked with administering the death penalty, performs "any duty needed to enable it to execute the judgment [of death]." Cal. Penal Code § 3604.1(c). California law also charges district attorneys with seeking the death penalty on "behalf of the people." *See* Cal. Gov't Code § 26500.

Despite the continued support of the people of California, the death penalty remained tied-up in the federal courts. In 2006, a California death-row inmate challenged California's then-existing death penalty protocol as violating the U.S. Constitution. The inmate sued the Governor of California, the Secretary of the California Department of Corrections and Rehabilitation, and the Warden of San Quentin State Prison. The California Attorney General defended the action in federal court. Over the ensuing years, about two dozen other

condemned inmates successfully intervened in the 42 U.S.C. § 1983 action and received a stay of execution. Because of this litigation, there was "a de facto moratorium on all executions in California." *Morales v. Cate*, 623 F.3d 828, 830 (9th Cir. 2010) (per curiam).

In 2018, the District Attorneys of San Bernardino, Riverside, and San Mateo, who each obtained death judgments against various plaintiff inmates, sought to intervene as of right under Federal Rule of Civil Procedure 24(a)(2). The District Attorneys contended that the Attorney General represented the interest of California's executive officers in the litigation—not the interest of the people. The District Attorneys argued that the voice of the people, for whom the death penalty was sought, must be permitted to participate. The district court denied the motion, and soon after, the Governor of California unilaterally imposed a moratorium on all executions. The District Attorneys appealed the denial of intervention. And a divided panel of our court affirmed, holding that the District Attorneys had no "significant protectable" interest in the death penalty litigation. *Cooper v. Newsom*, 13 F.4th 857, 865 (9th Cir. 2021).

In denying the District Attorneys' intervention in this case, not only do we cast aside the will of the people, but we seriously mangle our Rule 24 caselaw. As a court, we've set a rather low bar for what constitutes a "significantly protectable" interest. We are not to conduct an exacting and penetrating review of the claimed interest since the whole point of intervention is to provide "both efficient resolution of issues and broadened access to the courts." *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc) (simplified). And it does not require the interest to

be conferred by a directly on-point statute.  *See, e.g.*, *Kalbers v. U.S. Dep't of Just.*, — F.4th —, 2021 WL 6123196, at \*9 (9th Cir. 2021) (holding that FOIA, which allows the *government* to claim exemptions from disclosure, created a protectable interest for a third-party intervenor).  Instead, we are guided by "practical and equitable considerations and construe the Rule broadly in favor of proposed intervenors." *Wilderness Soc.*, 630 F.3d at 1179 (simplified); *see also W. Watersheds Project v. Haaland*, — F.4th —, 2022 WL 39845, at \*5 (9th Cir. 2022) ("In addition to mandating broad construction, our review is guided primarily by practical considerations, not technical distinctions." (simplified)).

While this case is about interpreting Rule 24, at its core, it is about the will of the people of California and our duty to respect it.  The State of California and her people have vested the District Attorneys with an interest in enforcing death judgments.  And in case after case, we've broadly construed the scope of a protectable interest.  But, for some reason, we have decided to nickel-and-dime the District Attorneys here.  Perhaps it's because this case involves the death penalty.  But the panel's decision has nothing to do with the merits of the death penalty.  And we shouldn't manipulate our intervention doctrine simply because a case touches on disfavored policy.  What's more, the panel's decision will likely have far-reaching effects on other areas of the law—like civil rights and environmental rights.  So we should not have been so quick to decline to rehear en banc the panel's decision.

For these reasons, I respectfully dissent from the denial of rehearing en banc.

# I.

Under Rule 24(a)(2), we must permit anyone to intervene in a federal action if the person "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). We use a four-part test in evaluating a Rule 24 motion:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc.*, 630 F.3d at 1177 (simplified).

For the last 40 years, we've liberally construed Rule 24(a)(2) and tilted the inquiry in "favor of intervention." *See Washington State Bldg. & Const. Trades Council v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982). This broad view of Rule 24 is rooted in concerns of judicial efficiency and access to justice: "[b]y allowing parties with a *practical* interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its

views before the court." *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (simplified).

Our court denied the District Attorneys' intervention solely because they failed to satisfy the "significantly protectable" interest prong of Rule 24. *See Cooper*, 13 F.4th at 865. That prong has two components: whether (1) a proposed intervenor "asserts an interest that is protected under some law," and (2) "there is a 'relationship' between [the proposed intervenor's] legally protected interest and the plaintiff's claims." *City of Los Angeles*, 288 F.3d at 398 (simplified). We erred on both components. Not only did we disregard our longstanding view of what constitutes a protectable interest. But we also significantly heightened the "relationship" requirement between the protectable interest and the plaintiff's claims in the litigation.

We should have fixed both errors on en banc review.

## A.

We've set a low threshold for evaluating a prospective intervenor's claim of a "significantly protectable" interest. There's no "clear-cut or bright-line rule," because "[n]o specific legal or equitable interest need be established" to meet the test. *Id.* at 398 (simplified). Instead, the "interest" test directs courts to make a "practical, threshold inquiry," and "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.* (simplified). And there's no requirement that the interest "be protected by the statute under which the litigation is brought." *Wilderness Soc.*, 630 F.3d at 1179. It is enough that the

"interest is protected by *some* law." *Id.* (emphasis added) (simplified).

We've even gone so far to say that, "[i]n some contexts, . . . interests less plainly protectable by traditional legal doctrines suffice[] for intervention of right." *Sierra Club v. EPA*, 995 F.2d 1478, 1482 (9th Cir. 1993), *abrogated on other grounds by Wilderness Soc.*, 630 F.3d at 1177–81. Examples of less concrete interests giving rise to a "significantly protectable" interest abound in our caselaw:

- An environmental group had a right to intervene in a challenge to a state law prohibiting the entry of radioactive waste into Washington "as the public interest group that sponsored the initiative." *Spellman*, 684 F.2d at 629–30.

- The National Audubon Society had a protectable interest for mandatory intervention into a lawsuit involving the creation of a conservation area because "[a]n adverse decision in th[e] suit would impair the society's interest in the preservation of birds and their habitats." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 526–28 (9th Cir. 1983).

- The National Organization for Women was entitled to intervene as of right in a suit litigating the procedures for ratification of the proposed Equal Rights Amendment purely based on its "interest in the continued vitality of the ERA." *State of Idaho v. Freeman*, 625 F.2d 886, 887 (9th Cir. 1980); *see also Sagebrush Rebellion*, 713 F.2d at 527 (reading *Freeman* to require intervention because the lawsuit involved "a cause . . . that [NOW] had championed").

- A public interest group satisfied the interest requirement because it had been "active in the process [U.S. Fish and Wildlife Services] went through" to list a particular snail species as endangered. *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1398 (9th Cir. 1995).

**1.**

Based on this precedent, it's clear we should have ruled that the District Attorneys have a "significantly protectable" interest in the litigation challenging the constitutionality of California's death penalty protocols. The District Attorneys are elected officials whose offices were created by the California Constitution. Cal. Const. art. XI, § 1(b). They are empowered by law to "conduct on behalf of the people all prosecutions for public offenses." Cal. Gov't Code § 26500. They have "sole discretion to determine whom to charge, what charges to file and pursue, and what punishment to seek." *Dix v. Superior Court*, 53 Cal. 3d 442, 451 (1991). They also "may sponsor, supervise, or participate in any project or program to improve the administration of justice." Cal. Gov't Code § 26500.5. Thus, California law grants the District Attorneys the general authority to prosecute and seek the death penalty on "behalf of the people" and, along with that, the responsibility to ensure that the judgments are enforced.

While the District Attorneys' general mandate to enforce criminal judgments may be enough, Proposition 66 confirms that they have exceeded the Rule 24 protectable-interest threshold. By approving Proposition 66, the people of California both expressly voiced their will to retain the death penalty and enacted a law expanding the authority of district

attorneys to carry out the punishment. Prop. 66, § 11 (approved Nov. 8, 2016, effective Oct. 25, 2017). California law now provides:

> If the use of a method of execution is enjoined by a federal court, the Department of Corrections and Rehabilitation [CDCR] shall adopt, within 90 days, a method that conforms to federal requirements as found by that court. If the department fails to perform any duty needed to enable it to execute the judgment, the court which rendered the judgment of death shall order it to perform that duty on its own motion, on motion of the District Attorney or Attorney General, or on motion of any victim of the crime.

Cal. Penal Code § 3604.1(c). As Judge VanDyke correctly noted, "[t]his statute codifies the District Attorneys' specific interest in ensuring that death penalty judgments are carried out." *Cooper*, 13 F.4th at 873 (VanDyke, J., dissenting). And it's clear that such authority "is a civil, not criminal function—making it clear that District Attorneys are empowered to represent the State and the People in *civil* litigation involving the legality of state agency procedures." *Id.*

The panel majority now declares that none of our prior Rule 24(a)(2) precedent is relevant in this case because the District Attorneys are "public officials." Concurrence at 14. The panel majority maintains that to intervene, "government officials," unlike other parties, must have "statutory authority to participate in the formulation of the policy at issue, or to represent the government entity or official who does have that

authority." *Id.* at 13. The panel majority cites no authority for this proposition. And nothing in our caselaw establishes such different rules for government officials and other parties. The text of Rule 24(a)(2) surely doesn't support a distinction.

The panel majority also contends that because the District Attorneys' "authority to pursue civil litigation is limited by state law," that means "that they do not have an interest sufficient to support intervention under Rule 24(a)(2)." *Id.* at 14. Again, that is incorrect. While California courts have recognized some limits to district attorneys' authority to pursue civil *prosecutions*, no California court has said that district attorneys are prohibited from *defending* the constitutionality of state laws, such as the State's death-penalty protocol.

The panel majority draws its conclusion from *Safer v. Superior Court of Ventura County*, 15 Cal. 3d 230, 233, 234–36 (1975), a case where a district attorney dropped criminal proceedings and opted to "prosecut[e]" the case through a contempt charge in a "civil case involving private parties in an economic dispute." *Id.* at 234–36. The California Supreme Court held that the "absence of any statute empowering the district attorney to appear *in private litigation such as the instant case*" showed that the district attorney's actions did not serve the public interest. *Id.* at 238–39 (emphasis added). And so *Safer* is not as broad as the panel majority would have it.

In fact, subsequent California cases show that any requirement for statutory authority to enter civil proceedings is not stringently construed and no on-point statutory grant is

necessary. *See, e.g.*, *Abott Lab'ys v. Superior Ct. of Orange Cnty.*, 9 Cal. 5th 642, 654–58 (2020) (allowing district attorneys to seek civil remedies under an unfair competition law even without an express statutory authority to do so); *People v. McKale*, 25 Cal. 3d 626, 633 (1979) (permitting district attorneys to civilly prosecute violations of one statute under a similar statute). And here, as stated above, California law empowers district attorneys to intervene in civil actions to force the State to effectuate its duty to carry out the death penalty. Cal. Penal Code § 3604.1(c). Thus, contrary to the panel majority's contention, California law does not block the District Attorneys from intervening under Rule 24(a)(2).

In short, if an "interest protected by law" may exist simply by "sponsoring" an activity, having an "interest" in the outcome, or by "championing" the subject of the litigation, then the District Attorneys easily exceeded that threshold here.

## 2.

The panel majority erred by requiring the District Attorneys to show an on-point statutory grant to intervene in challenges to death penalty protocols. *See Cooper*, 13 F.4th at 866. It concludes that the District Attorneys have no "significant protectable" interest because they "have no authority to choose the method by which California will execute condemned inmates" and no authority "to defend the State against constitutional challenges to execution protocols." *Id.* at 866–68.

But the panel majority "mistakenly focuses on the underlying legal claim instead of the property or transaction

that is the subject of the lawsuit." *Wilderness Soc.*, 630 F.3d at 1178. We don't myopically focus on "technical distinctions," *Haaland*, — F.4th —, 2022 WL 39845, at *5 (simplified), nor do we require the type of direct statutory authority described by the majority, *see Kalbers*, — F.4th —, 2021 WL 6123196, at *9. Rather, we simply evaluate, through a practical and generous lens, whether the proposed intervenor's interest is protected by "some law." *Wilderness Soc.*, 630 F.3d at 1179 (simplified). It thus follows that the cramped view espoused by the panel can neither be squared with precedent nor with our guiding principles favoring intervention.

For example, compare *City of Los Angeles* with this case. There, a police union sought mandatory intervention in an action that the United States brought against the City of Los Angeles and the Los Angeles Police Department over the Department's alleged pattern and practice of depriving citizens of their constitutional rights. 288 F.3d at 396. We held that the police union, which represented the LAPD's "rank and file" officers, had a protectable interest in the merits of the action because the complaint sought injunctive relief and made factual allegations against its member officers, even if no officer had an interest in the precise constitutional claims asserted. *Id.* at 398–99. There, we didn't look to see if the police officers had a statutory right to intervene or the authority to engage in adversarial litigation. We instead focused on the litigation's impact on the officers and their job performance. We should have done the same here. Because as a practical matter, the death-penalty litigation affects the District Attorneys' ability to ensure that death judgments are carried out effectively.

## B.

The "significant protectable" interest prong also requires a "relationship" between the proposed intervenors' "legally protected interest and the plaintiff's claims." *Id.* at 398 (simplified).  Once again, this requirement is a low hurdle. While the litigation must not be too remote from the protected interest, only some relationship to "the underlying subject matter of the litigation" is required. *Alisal Water Corp.*, 370 F.3d at 920; *see id.* (holding that an interest "several degrees removed" from the litigation will not suffice).  The relationship requirement is met "if the resolution of the plaintiff's claims actually will affect the applicant," *City of Los Angeles,* 288 F.3d at 398 (simplified), or if it *may* lead to a practical impairment of interests, *id.* at 401.  We've never said that the litigation must be inextricably tied to the interest or that the litigation must infringe on the core of the protected interest.  But that's what the panel majority essentially held—again using a more stringent standard than our precedent calls for.

The District Attorneys' interest in ensuring that death judgments are carried out is directly related to the litigation, which seeks to render (and has rendered) the State's execution methods invalid.  As the panel even noted, the stays in the litigation have "effectively suspended the death penalty in California and ha[ve] thereby prevented the District Attorneys from successfully moving in the Superior Court to set execution dates." *Cooper*, 13 F.4th at 867.

Yet the panel majority inexplicably held that the District Attorneys' interests didn't relate to the litigation.  It did so by holding that the litigation only "incidentally affects" the way District Attorneys may carry out their duties. *Id.* at 867.  The

panel majority reasoned that the "District Attorneys' general interest in executing condemned inmates" and "their more specific interest in requesting execution dates" is not implicated by the litigation, "which concerns only the method by which the State may perform executions." *Id.*

The panel majority is wrong for two reasons. First, it changed the threshold for relatedness by requiring an effect on the *core* protected interest. According to the panel majority, "incidental[]" effects are not enough. But that's not what our precedent says. Instead, our cases only require that the resolution of the claims may practically impair or "actually . . . affect" the intervenor and her interest. *City of Los Angeles*, 288 F.3d at 398, 401. Second, even if the panel's standard were the law, the District Attorneys more than met it. As we have said, the litigation has led to the "de facto" (and now de jure) "moratorium" on the death penalty. *Cate*, 623 F.3d at 829–30. So the litigation wouldn't merely "incidentally affect[]" the District Attorneys' interest in effecting the death penalty, it would (and did) completely destroy it. As Judge VanDyke observed, it's "a little like saying that a statute only 'incidentally affects' car dealers because all it does is prevent them from selling cars." *Cooper*, 13 F.4th at 873–74 (VanDyke, J., dissenting).

It's clear that the heightened standard created by the panel majority is untethered from our precedent and should have been revisited.

## II.

With this case we disregard the will of the people of California and our precedent. We now sow more confusion in our law—impacting not only the administration of the

death penalty, but also other areas including environmental litigation, voting rights, and civil rights. We should've reheard this case. I respectfully dissent.

---

CALLAHAN, Circuit Judge, joined by BUMATAY and VANDYKE, Circuit Judges, dissenting from the denial of rehearing en banc:

I fully join Judge Bumatay's dissent from the denial of rehearing en banc. I write separately to further emphasize the profound practical consequences of the panel majority's ruling.

California voters have a lengthy history of supporting the death penalty. The current version of the state's death penalty statute dates back to 1978 when voters passed Proposition 7 with the intent to "expand and strengthen the death penalty." *People v. Solis*, 46 Cal. App. 5th 762, 772–73, 776–77 (2020). Californians subsequently rejected Proposition 34 (in 2012) and Proposition 62 (in 2016), both of which would have repealed the death penalty.[1]

In 2016 voters also approved Proposition 66, which reaffirmed the electorate's support for the death penalty and was designed "to facilitate the enforcement of judgments and achieve cost savings in capital cases." *Briggs v. Brown*, 3 Cal. 5th 808, 822 (2017). Proposition 66 also gave district attorneys the right to file a motion to compel the California

---

[1] History of Capital Punishment in California, Cal. Dep't Corr. & Rehab., https://www.cdcr.ca.gov/capital-punishment/history/ (last visited Jan. 16, 2022).

Department of Corrections and Rehabilitation ("CDCR") to "perform any duty needed to enable it to execute" judgments of death. Cal. Penal Code § 3604.1(c).

Despite this clear legal mandate from voters, the Governor of California unilaterally repealed California's lethal injection protocol and instituted a moratorium on state executions. The Governor and the Secretary of the CDCR then agreed with the plaintiffs, inmates on California's death row, to voluntarily dismiss this case on terms that will resurrect the inmates' Eighth Amendment challenge to the protocol if the Governor's moratorium is ever withdrawn. *Cooper v. Newsom*, 13 F.4th 857, 863–64 (9th Cir. 2021).

Notably absent from this litigation is any party interested in pursuing the California electorate's clearly stated objectives. Yet the panel majority rejected the district attorneys' attempt to intervene to do just that, ostensibly on the ground that the district attorneys have no legal interest in enforcing the death penalty. This position is directly contradicted by the terms of Proposition 66, which *expressly provides* California district attorneys with the right to seek to compel the CDCR to carry out the death penalty. Cal. Penal Code § 3604.1(c); *Cooper*, 13 F.4th at 872–74 (VanDyke, J., dissenting).

The district attorneys also have a strong interest in providing justice to the families of the plaintiffs' victims. Proposition 66 included "a series of findings and declarations to the effect that California's death penalty system is inefficient, wasteful, and subject to protracted delay, *denying murder victims and their families justice and due process*." *Briggs*, 3 Cal. 5th at 823 (emphasis added).

The case of Michael Morales, the original plaintiff in this action, provides a prime example of the concerns that animated California voters. Morales's victim, seventeen-year-old Terri Winchell, disappeared on January 8, 1981, after leaving her house to pick up some food. *Morales v. Woodford*, 388 F.3d 1159, 1163 (9th Cir. 2004). A few days later,

> Terri was found naked except for a shirt and bra, which were pulled up over her breasts. She had suffered six blows to the side of her head and seventeen blows to the back of her head. The base of her skull had been shattered. Her skull, cheek bones, and jaw were fractured. She had been stabbed four times in the chest. Her face and body were severely bruised and much of the skin of her front side was torn up. She had multiple wounds on her hands and forearms, typical of a person defending herself.

*Id.* Morales was convicted of Terri's rape and murder and sentenced to death in June 1983. *People v. Morales*, 48 Cal. 3d 527, 540 (1989). After more than two decades of additional state and federal court litigation, we denied his petition for habeas relief in 2004. *Morales v. Woodford*, 388 F.3d at 1166–67, 1180.

Morales was finally scheduled to be executed in February 2006, more than 25 years after Terri's murder. *Morales v. Hickman*, 438 F.3d 926, 927 (9th Cir. 2006). But Morales then brought this case challenging California's lethal injection protocols, kicking off more than a decade of additional state and federal court litigation. *Cooper*, 13 F.4th

at 861–62. California's administrative proceedings instituted in response to the litigation were so lengthy and complicated that the CDCR has an entire page on its website devoted to recounting this history.[2] Meanwhile, Terri's family—and the families of other victims—have repeatedly and unsuccessfully sought to enforce the judgments against Morales and other death row inmates.[3] It has now been more than 40 years since Morales raped and murdered Terri, and despite his death sentence Morales has outlived both Terri's brother and mother.[4]

This is not the first time the litigation strategies of California's governor and attorney general have effectively left district attorneys and victims' families without representation. For example, recently we were confronted with a case where the California attorney general had successfully defended a 1991 murder conviction for decades, even obtaining a favorable result before a three-judge panel of this court. *Ellis v. Harrison*, 891 F.3d 1160, 1162 (9th Cir. 2018). After the inmate petitioned for rehearing en banc, the attorney general changed positions and asked us to grant habeas relief, which we agreed to do in light of the State's

---

[2] Timeline of Lethal Injection Protocol Regulations, Cal. Dep't Corr. & Rehab., https://www.cdcr.ca.gov/capital-punishment/lethal-injection-timeline/ (last visited Jan. 16, 2022).

[3] *Id.*; *see also In re Alexander*, 859 F. App'x 32, 34 (9th Cir. 2021).

[4] Obituary of Barbara Christian, Legacy.com, https://www.legacy.com/us/obituaries/recordnet/name/barbara-christian-obituary?id=10361068 (last visited Jan. 16, 2022); Obituary of Greg McCormack Winchell, Legacy.com, https://www.legacy.com/us/obituaries/recordnet/name/greg-winchell-obituary?id=22890207 (last visited Jan. 16, 2022).

concession. *Ellis v. Harrison*, 947 F.3d 555, 556 (9th Cir. 2020) (en banc). But before we considered the question, we appointed an amicus curiae to defend the judgment and represent the interests of not only the district attorney that had obtained the conviction, but also "the victims and the community that the prosecutor is charged to represent." *Ellis*, 947 F.3d at 569 (Callahan, J., dissenting). Here, the panel majority's decision ensures that there is no party with a seat at the table in this litigation to defend these interests in this case. Federal Rule of Civil Procedure 24(a)(2) should not be read in a way that ignores these interests and prevents not only this court, but the Supreme Court from considering the underlying merits of the arguments of those that wish to defend California's criminal convictions and the imposition of capital punishment.

Since 2006, California has not executed an inmate on death row. Despite the California voters' efforts to change that situation, the panel majority's refusal to allow district attorneys to play their important statutory role in enforcing the death penalty means that the specter of this federal court litigation will continue to subvert the voters' will and deny justice to victims' families even if the moratorium is at some point withdrawn. The people of California gave their district attorneys the express authority to facilitate the enforcement of the death penalty. The panel majority's decision allows the parties in this case to circumvent those rights by ensuring that no one interested in defending them is permitted to do so, effectively silencing the voices of victims, their families, and California's voters. I dissent from the decision not to rehear this case en banc.

VANDYKE, Circuit Judge, with whom CALLAHAN, IKUTA, and BUMATAY, Circuit Judges, join, dissenting from the denial of rehearing en banc:

I agree with Judge Bumatay and Judge Callahan's excellent dissents, and join both in full. I write separately to briefly make one supplemental observation about our circuit's inconsistent application of Rule 24. As Judge Bumatay describes, when surveying our circuit's cases analyzing whether a party has a "significantly protectable" interest to warrant intervention, it is hard not to come away with the impression that the level of "interest" we have required of potential intervenors has varied significantly. It is understandable that such differential treatment could lead the public to wonder whether the variance is a result of something other than rote application of the intervention standard itself. Correct or not, that perception is unfortunate and reflects badly on our court and the appearance of impartiality. We need a standard that will result in setting a more consistent threshold for intervention.

One candidate to offer more stability to our Rule 24 analysis is looking to the related doctrine of standing. The Supreme Court has already indicated that parties seeking to intervene must meet the traditional standing requirements. *See Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013) ("That means that standing must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance." (internal quotation marks omitted)); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 65 (1997) ("An intervenor cannot step into the shoes of the original party unless the intervenor independently fulfills the requirements of Article III." (internal quotation marks omitted)). Standing is a "irreducible constitutional

minimum," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), that applies with equal force to parties seeking to intervene. Linking Rule 24's "interest" inquiry to the well-established standard for standing might go a long way towards smoothing out our inconsistent intervention requirements.

As Judge Bumatay limns in his dissent, our circuit has in the past allowed intervention for parties whose Article III standing was suspect at best. So it may be that some of our past Rule 24 cases have set the intervention bar *too low*. This past watering-down of the intervention requirements by our court only makes the panel's ruling here less defensible, however, given that the District Attorneys clearly had standing to participate in this case. As I explained in my dissent from the original panel decision, "particularly in this case where only the District Attorneys are attempting to effectuate the intent of the People of California as enshrined in Proposition 66, 'any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of *irreparable injury*.'" *Cooper v. Newsom*, 13 F.4th 857, 874 (9th Cir. 2021) (VanDyke, J., dissenting) (emphasis added) (alterations and citation omitted) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)).

Our erratic application of Rule 24 needs correction, and if our circuit had taken this case en banc it could have done so by tying Rule 24's "interest" inquiry to our well-established standing doctrine. But until something like that is done—either by our court or the Supreme Court—future parties and panels will be forced to address these issues against the backdrop of our inconsistent precedents, and the

lingering appearance of unfairness they perpetuate. I respectfully dissent from our decision not to rehear this case.